788 So.2d 812 (2001)
Kenneth GANDY a/k/a Kenneth D. Gandy a/k/a Kenneth Darnall Gandy, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00172-COA.
Court of Appeals of Mississippi.
March 20, 2001.
Rehearing Denied June 19, 2001.
James N. Potuk, Quitman, Attorney for Appellant.
*813 Office of the Attorney General by Scott Stuart, Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., THOMAS, and LEE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Kenneth Gandy was convicted of statutory rape after a jury trial. On appeal, Gandy argues that the trial court erred in admitting his confession, in allowing leading questions and in failing to request a presentence report. Gandy also argues that his conviction is against the overwhelming weight of the evidence. We find no merit in any of the arguments and affirm the conviction.

FACTS
¶ 2. The Department of Human Resources contacted the Waynesboro Police Department after a 12 year old girl alleged that she had been molested. Waynesboro Police Officer Marvin Overstreet went to the Department of Human Resources to interview the girl. She informed Overstreet that Gandy, who was the live-in boyfriend of her mother, had raped her. The girl gave a detailed account of what happened.
¶ 3. Overstreet discovered that Gandy was already in custody from a family disturbance the previous day. At the jail, Overstreet informed Gandy of his constitutional rights and notified him of the rape accusation. Gandy signed a waiver of rights and confessed. Overstreet wrote out the confession. Gandy then read and signed the statement. He was later indicted for statutory rape.
¶ 4. At the trial, the victim testified as to what occurred on the day in question. She explained how Gandy had sexual intercourse with her against her will in her own bed. Gandy's confession was introduced. The jury returned a verdict finding Gandy guilty of statutory rape. After the jury's dismissal, the judge immediately sentenced Gandy without waiting for a presentencing report. Gandy appeals this conviction.

DISCUSSION

1. Admissibility of the Confession
¶ 5. Gandy filed a pre-trial motion to suppress his confession. At a suppression hearing, Gandy stated that his confession had been coerced as Officer Overstreet who took his statement warned that he would not be released on bond unless he confessed. Gandy further testified that he did not tell Overstreet all that was included in the typed confession. Overstreet testified that the notes that he took were an accurate record of what Gandy said, and these notes were transcribed and Gandy signed the typed statement. Overstreet denied that he had promised Gandy anything in return for a confession. The trial judge found that the State had met its burden of proof that the confession was voluntary and that Gandy's allegations were not credible.
¶ 6. Our review of a trial judge's factual findings regarding a confession is limited. Miller v. State, 740 So.2d 858, 866 (Miss.1999). We will reverse only if the ruling is against the overwhelming weight of the evidence or manifestly wrong. Id. If a person in custody has been notified of his relevant constitutional rights and then gives a voluntary confession, meaning one not prompted by promises, threats or coercion, the confession is admissible. Richardson v. State, 722 So.2d 481, 487 (Miss. 1998).
¶ 7. The burden is on the State to prove beyond a reasonable doubt that the confession was voluntary. Haymer v. State, 613 So.2d 837, 839 (Miss.1993). This "burden is met and a prima facie case made out by testimony of an officer, or *814 other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." Chase v. State, 645 So.2d 829, 838-39 (Miss.1994).
¶ 8. Here, Gandy attacks the voluntariness of his confession. Conflicting testimony was presented. Resolution of conflicting testimony is for the trial court. We find that the trial judge's findings were supported by significant evidence and we will not disturb them.

2. Leading questions
¶ 9. The trial judge allowed the young victim to be asked certain leading questions, specifically informing counsel that this was because of her age.
¶ 10. "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." M.R.E. 611(c). However, within the comments to this rule, it is noted that in some situations the use of leading questions may become necessary. "Children are a classic example of the kinds of witnesses for whom leading questions may be necessary." Ivy v. State, 522 So.2d 740, 742 (Miss.1988). Gandy argues that Ivy is inapplicable here because the witness did not first exhibit problems with communication. The record does not reveal any hesitancy on the victim's part in testifying as to the events that occurred. However, communication difficulties are not just in situations where the victim is embarrassed or ashamed. Here the victim testified as to the details of the event without any difficulty. She testified using terms in the vernacular. The leading questions only clarified the terms used in order to obtain the anatomically correct terminology. In this case the communication difficulties concern the terminology.
¶ 11. Gandy contends that without the use of the leading questions the State would not have proved its case. We find only that certain clarity was brought to the testimony by the nature of the questions, and disagree that any substantively different evidence was thereby admitted. Gandy was not prejudiced. The leading questions were proper. We find no error on this point.

3. Overwhelming Weight of Evidence
¶ 12. Gandy argues that his conviction was against the overwhelming weight of the evidence. This argument centers on the confession and the leading questions. Gandy contends that without the confession or testimony of the victim through leading questions, the evidence does not support his conviction. Regardless of the state of the evidence without the confession, and we do not hold that the girl's testimony by itself was in anyway deficient, the confession was eminently admissible.
¶ 13. We have already detailed the evidence. The girl identified Gandy and swore that he had raped her. Gandy himself so confessed. The overwhelming mass of evidence supports, not weakens, the verdict.

4. Presentencing Report
¶ 14. Gandy's last assignment of error is that the trial judge's failure to order a presentencing report makes the sentence improper. Gandy found no precedents, court rules, nor other authority to support his contention nor do we. Instead we find that a judge "may direct that a presentence investigation and report" be made. UCCCR, Rule 11.02. This rule has been held to be wholly discretionary in nature. Hart v. State, 639 So.2d 1313, 1320 (Miss.1994).
¶ 15. Contrary to Gandy's assertions, the judge stated on the record his reasons *815 for eschewing a presentence report and for imposing this length of sentence rendered. A defendant has no right to demand a presentence report. Roberson v. State, 595 So.2d 1310, 1315 (Miss.1992). The trial court did not err.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF THE CONVICTION OF STATUTORY RAPE AND SENTENCE TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND $5000 FINE ARE AFFIRMED. ALL COSTS ARE ASSESSED TO WAYNE COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.